CRANE, appellant, and DECAMP and others, respondents.

1. When a final decree involves the merits of the case settled by the interlocutory decree, an appeal from the final decree brings the whole case before the court.

2. If a person having charge of the property of another so confounds it with his own that it cannot be distinguished, he must bear all the inconvenience of the confusion, and must separate his own property, or lose it, if the obligation of keeping an account rests upon him.

*Mr. Kirkpatrick* and *Mr. T. Runyon*, for appellant.

*Mr. Linn* and *Mr. C. Parker*, for respondents.

The opinion of the court was delivered by

VAN SYCKEL, J.

By the decree of this court made in June Term, 1869, it was ordered that the record in this cause be remitted to the Court of Chancery, that an account might be taken of all the rents paid for the leased premises in controversy in this suit, and the interest thereon, from which should be deducted taxes paid and the interest thereon; and that the balance of rent, after the payment of taxes, should be apportioned in proportion to the value to the tenant under the lease of the respective lands late of Augusta Decamp, and of Eliza A. Crane, including her wood lot, subject to certain charges in said decree mentioned.

In pursuance of an order made by the Chancellor, reference was made to a master, who made his report that the sum of $14,553.12 was due from said Eliza to said Edward Decamp, with interest thereon from July 1st, 1870.

On the 19th of April, 1871, the master's report was confirmed, and no appeal having been taken from this interlocutory order within the time limited by law, a decree final was made by the Chancellor on the 16th of June, 1871, which Eliza A. Crane has removed by appeal into this court.

The respondents insist that the amount reported by the master is correct, and that if it is not, its accuracy cannot now be controverted, because no appeal was taken from the interlocutory decree within the forty days given by the statute for that purpose.

When a final decree, as in this case, involves the merits of the case settled by the interlocutory decree, an appeal from the final decree brings the whole case before the court. *Terhune* v. *Colton*, 1 *Beas.* 312.

The Crane lot containing eight acres of land, and the Decamp lot ten acres, adjoining each other, were leased and worked together as an iron mine, under a rental of thirty-seven and a half cents per ton for all the ore taken out. The contention on this appeal is as to the amount of ore taken from each lot.

The period covered by the master's report is from June, 1854, when the lessee commenced mining, until April 1, 1870. It is admitted that the whole amount of ore taken from both lots is 117,167 tons, for which the royalty or rental of thirty-seven and a half cents per ton has been received by Eliza A. Crane, but no account has been kept for the whole time by which these returns can be accurately divided between the parties. No accounts were kept between the two lots up to April 1st, 1864, at which date 46,995 tons had been taken from the leased premises. Exhibits E and F show that of the ores taken between April, 1864, and April, 1870, (except 18,000 tons,) about 2000 tons more were mined from the Crane than from the Decamp lot. This 18,000 tons was raised from shaft No. 2, from which both lots were worked, no account of the quantity taken from the respective lots through this shaft having been kept.

One of the witnesses examined for the respondents testifies that in his opinion about 15,000 tons more have been taken from the Decamp than from the Crane lot, while another estimates the excess from the Decamp lot to be 37,756 tons. The latter witness bases the accuracy of his estimate upon a map made by Briersworth, which was not shown to be correct,

except in so far as it was partly verified by measurements taken by the witness. Even if this map is assumed to be substantially accurate, the estimate is not reliable, because the width of the vein, which varies from two to twelve feet, does not enter into the computation. On the part of the appellant, witnesses, who seem to have had at least equal means of knowledge, assert decidedly that the greater quantity of ore has been procured from the Crane lot. In this state of uncertainty, it is material to consider the relation that the parties occupy to each other.

If a person having charge of the property of another so confounds it with his own that it cannot be distinguished, he must bear all the inconvenience of the confusion, and must separate his own property, or lose it, if the obligation of keeping an account rests upon him. *Lupton* v. *White*, 15 *Vesey* 432; *Hart* v. *Ten Eyck*, 2 *Johns. Ch.* 62.

If, therefore, the duty had fallen upon Mrs. Crane of keeping an account of the product of each mine, all uncertainty would be solved against her, and the decree could not be disturbed. But in this case Decamp, in the preparation of the lease, omitted to provide for rendering such account, neither he nor Mrs. Crane contemplating that it would in any contingency become necessary to have it. Neither party, therefore, occupies a superior position, by reason of the uncertainty which rests upon this question. There are 64,993 tons of ore which cannot be apportioned under the testimony with any certainty. In the absence of any other controlling circumstance, it would be just to divide it in proportion to the number of acres in each lot; but the fact that Mrs. Crane's wood lot furnished the wood for the entire mine, that the pump shaft on her lot drained both properties, and that of the certainties her lot gave in excess of the other about 2000 tons, must weigh against the advantage which the Decamp lot has in number of acres. No allowance was made by the master to Mrs. Crane for the pump shaft, nor did his account include the value to the lessee of her

wood lot, as was directed by the decree of this court on the former appeal.

In this view of the case, I think that the most equitable result that can be reached will be to divide the products of the mine for the entire period of working up to April, 1870, equally between the two lots.

The master's report shows that the net proceeds of the ore in Mrs. Crane's hands on the 1st day of July, 1870, after deducting taxes, is the sum of $56,978.83, one-half of which, or the sum of $28,489.41, should be credited to Decamp. This latter sum is to be charged (as per the master's report) with the sum of $19,488.19, due from Decamp to Mrs. Crane, leaving in her hands, due to the Decamp lot, on the 1st day of July, 1870, the sum of $9001.22, which should be a lien on her eight acre lot until it is paid.

In my opinion the decree of the Chancellor should be reversed, each party to pay their own costs in this court and in the court below, and the record remitted to the Court of Chancery that a decree may be had in accordance with the views herein expressed.

The whole court concurred.